(11 P.3d 81)

No. 83,806

HARRY DAWSON, *Appellee,* v. GIVENS CONSTRUCTION CO., INC., *Defendant,* and WESTERN SURETY COMPANY, *Appellant.*

Opinion filed September 15, 2000.

*Keith C. Sevedge,* of Lenexa, and *Patrick J. Wielinski* and *Michelle I. Rieger,* of Ford White Wielinski & Salazar P.C., of Dallas, Texas, for appellant.

*Jeffery L. Carmichael* and *Jana D. Abbott,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellee.

Before BEIER, P.J., RULON, J., and STEPHEN D. HILL, District Judge, assigned.

BEIER, J.: As surety for a highway project subcontractor, defendant-appellant Western Surety Company (Western) seeks review of a judgment in favor of plaintiff-appellee and landowner Harry Dawson, who sued Western to recover for the subcontractor's negligence and breach of a borrow pit agreement. Western contends Dawson, as a supplier to the subcontractor, cannot recover on a performance and payment bond issued for the sole

benefit of the general contractor. We agree, and we reverse and remand for entry of summary judgment in favor of Western.

The following essentially undisputed facts inform our analysis.

Popejoy Construction Company, Inc., and its successor, Ritchie Corporation, (collectively Popejoy) had a contract with the State of Kansas for highway improvements. Popejoy provided a bond issued by Fidelity & Deposit Co. of Maryland for the benefit of the State and third-party claimants to secure Popejoy's performance of the general contract, as required by K.S.A. 68-410.

Popejoy subcontracted with Givens Construction Company, Inc. (Givens), for excavation and piping work on the project. Givens provided a combination performance and payment bond issued by Western, naming Popejoy as the sole obligee. The bond further stated: "No right of action or recovery shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein, its heirs, executors, administrators or assigns."

Givens entered into a borrow pit agreement with landowner Dawson to acquire fill material to perform its work under the subcontract. The agreement required Givens to pay for soil removed and to perform certain other removal-related tasks on Dawson's land.

Dawson alleged that he suffered damages when Givens filed for bankruptcy without completing payments or work called for in the borrow pit agreement. He first filed a claim for damages against the Kansas Department of Transportation (KDOT). KDOT acknowledged his claim and notified him that KDOT would take no further action. KDOT further advised Dawson that his claim was against the general contractor and referred him to K.S.A. 68-410.

Rather than suing Popejoy, Dawson obtained relief from the bankruptcy stay and sued Givens, Western, and Givens' liability insurance carrier. It is uncontroverted that, shortly after the filing of the amended petition naming Western for the first time, Western's vice president wrote to Dawson's counsel, pointing out that Dawson had no cause of action under Western's bond. The letter stated in pertinent part:

"[Y]our client has no right of action against the payment bond issued to Givens Construction Company. That bond is for the exclusive benefit of Popejoy Con-

struction Company/Ritchie Paving, Inc. Subcontractors and suppliers are afforded no protection under the bond. Western Surety Company has reserved all of its rights, remedies and defenses in this matter, including the defense that your client has no right of action against this bond.

"Although Western Surety Company is still willing to negotiate an out-of-court settlement with your client, we cannot consent to suit, since your client has no right against the bond. A copy of the bond is enclosed for your review. . . . Western Surety Company reserves the right to request appropriate sanctions in the event the Court determines this suit to have been filed without merit.

"As always, Western Surety Company reserves all rights, remedies and defenses under the bond, the contractual documents, the General Indemnity Agreement executed by Givens Construction Company and its individual indemnitors in favor of Western Surety Company, and all applicable law."

The amended petition included no allegations regarding Western other than its service address, its surety status, and its refusal to accede to plaintiff's demand for payment. Western's answer included admissions of these three vanilla allegations. It also included a general denial of all claims not specifically enumerated; an affirmative defense of prevention of performance; and a reservation of any defenses, counterclaims, or cross-claims discovery might unearth. It did not explicitly repeat Western's position from the earlier letter to Dawson's counsel, *i.e.*, that the bond provided Dawson no cause of action against Western. The amended petition had not explicitly pleaded the converse.

The parties proceeded with discovery. A few weeks before trial, Western filed a motion for summary judgment, again arguing, among other things, that Dawson could not recover under the express terms of the surety bond.

Western apparently also filed a motion for leave to amend its answer on the same day. We say that a motion for leave to amend (referred to in the district court as a "motion to amend") Western's answer was "apparently" filed because the motion itself is not contained in the record on appeal. We are able to rely on this fact because the parties do not dispute the timing or the content of the motion for leave to amend Western's answer. The motion for leave to amend sought to add, among other things, two paragraphs under the caption "Affirmative Defenses." One asserted that Dawson had failed to join Popejoy as a necessary party and the other asserted,

again, that Western was obligated only to indemnify Popejoy under the terms of the bond.

The parties entered into an *agreed* pretrial conference order, which, as such orders uniformly do, included the statement that it superseded all pleadings and controlled the future course of the action. The order also recited that Western had a pending motion for leave to amend its answer, which would be decided before trial. The sections of the order containing the parties' contentions and theories were factual in nature and did not mention Western's legal theory regarding the limited coverage of the bond. However, the list of legal issues agreed to by the parties *before* the motion for leave to amend was ruled upon included the following:

"Is plaintiff entitled to recovery under the payment and performance bond issued by Western Surety Company pursuant to the Borrow Pit Agreement between plaintiff and Givens Construction Company?"

The trial judge waited until the day of trial to decide Western's motion for leave to amend and its motion for summary judgment. He denied both.

With regard to the motion for leave to amend, the district judge's journal entry states that the motion sought to add a defense known to Western when it filed its answer and that its late assertion would prejudice the plaintiff, whose suit against Popejoy would be barred by the statute of limitations.

With regard to the motion for summary judgment, Dawson had argued in his response that the motion's focus was on the failure to join Popejoy, which, in Dawson's view, constituted an affirmative defense required to be included in the original answer under K.S.A. 60-208(c). The district judge stated the following reason for denying the motion on the day of trial:

"My rationale for denying the motion [for summary judgment] is primarily that it is of a flavor of a statute of limitations defense that was not [pled] and that if the issue had been raised at an early time the plaintiff would have been in a position to file amended claims, pleadings, et cetera that the equities of the matter make it unfair on the eve of trial to allow you to assert defenses that were not asserted at an earlier time."

The matter proceeded to trial, and the jury awarded Dawson $214,225.72 in damages.

Western's first claim of error is dispositive of this appeal. It focuses on the district judge's adverse ruling on summary judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal, the Court of Appeals applies the same standards as the trial court. See *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999). In addition, examination of this issue requires interpretation of Western's bond. The interpretation and legal effect of a written instrument is a matter of law over which an appellate court exercises unlimited review. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. See *In re Cherokee County Revenue Bonds*, 262 Kan. 941, 953, 946 P.2d 83 (1997).

When a surety's bond for a subcontractor names only the general contractor as obligee and explicitly excludes the possibility of any third party being able to claim that it was an intended beneficiary with a right to sue, the subcontractor's supplier has no cause of action against the surety. Western's bond named Popejoy Construction Company as the only obligee and explicitly excluded the possibility of any third party being able to claim that it was an intended beneficiary with a right to sue: "No right of action or recovery shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein, its heirs, executors, administrators or assigns."

Under the bond, Western undertook to pay only Popejoy in the event it suffered a loss because of Givens' nonperformance or nonpayment under the subcontract. The subcontract between Popejoy and Givens was distinct from the borrow pit agreement between Givens and Dawson. Western's bond was designed by the parties to back up Givens' obligations to Popejoy under the subcontract, not Givens' obligations to Dawson under the borrow pit agreement. Western could become liable in relation to the borrow pit agreement only if Givens' default on the agreement caused loss to Popejoy. There being no loss to Popejoy, there was no right of recovery against Western.

The district judge simply lost sight of this straightforward legal issue and thus missed the inevitable conclusion that Western was entitled to judgment as a matter of law. This is understandable, given the misdirections that bombarded him from both sides of the case.

Western, having made clear its position on its bond's coverage in its letter to Dawson's counsel, should not have turned around 6 months later and treated the issue as a new "affirmative defense" that had to be added to the case by means of a motion for leave to amend. It was Dawson's burden to prove that Western owed him a duty and/or breached an agreement with him, not Western's to prove the opposite.

For his part, Dawson should not have ignored the bond coverage issue in his response to the motion for summary judgment and his response to the motion for leave to amend by telling the district judge to focus instead on whether Western had ever argued that Popejoy was a necessary party. Dawson and his counsel knew there was nothing surprising or prejudicial about Western's assertion that the bond did not provide Dawson with a right of action against it. KDOT had told Dawson from the beginning that he needed to look to Popejoy for satisfaction, and Western's letter to Dawson's counsel could not have been more plain. In our view, the *agreed* pretrial conference order's inclusion of the issue as one of the legal questions awaiting resolution speaks volumes about what Dawson and his counsel knew and when they knew it. They did not need Western's motion for leave to amend to tell them that Western would defend on the basis that the bond's sole obligee was Popejoy.

Our decision on the summary judgment issue renders Western's other appellate issues moot.

The judgment of the district court is reversed, and this case is remanded for entry of summary judgment in favor of defendant-appellant Western.